McKAY & HOOD, Appellants, v. CHARLES J. UNDERWOOD, Respondent.

| 47 | 185 |
| 113 | 619 |
| 47 | 185 |
| 125 | 579 |
| 59a | 339 |
| 47 | 185 |
| 139 | 560 |
| 47 | 185 |
| 73a | 16 |
| 47 | 185 |
| 163 | 191 |

1. *Practice, civil — Appellate court will not disturb a verdict because against the weight of evidence.*—An appellate tribunal will not reverse simply because the verdict is against the weight of evidence, but to justify such an interference there must be a total and complete failure of testimony tending to support the issue.

2. *Practice, civil — Act of March 4, 1869, does not authorize General Term to reverse merely on weight of evidence.* — The object of the fourteenth section of the act organizing the Circuit Court of St. Louis county in General Term, as amended by the act of March 4, 1869 (Sess. Acts 1869, p. 18, § 2), was not in any manner to change or enlarge the scope or powers of the court at General Term as they previously existed, but to provide for appeals in cases where it was apprehended that final judgment had not been rendered. But it does not authorize the General Term to reverse merely on weight of evidence.

*Appeal from St. Louis Circuit Court.*

*Clover*, for appellants.

It was not within the jurisdiction of the Circuit Court to reverse the judgment of the Circuit Court at Special Term because, in the opinion of the judges of the Circuit Court at General Term, the verdict was against the weight of evidence. (Tilford v. Ramsey, 43 Mo. 421 ; see also Strouser v. Drennan, 41 Mo. 296 ; Faugman v. Hersey, 43 Mo. 123 ; Easley v. Elliott, 43 Mo. 289 ; Gillespie v. Stone, 43 Mo. 351.)

*Voorhies & Mason*, for respondent.

The question is raised that the Circuit Court has no right or authority, sitting in General Term, to review the evidence elicited at the trial in Special Term. The Circuit Court, in General Term, did examine the records in this case, and did go through

the evidence to ascertain whether the verdict was in fact contrary to the evidence and the law, as stated in the defendant's motion for new trial. This comes directly within the province of the General Term. The main object of the Legislature, in providing for the General Term of the Circuit Court, was manifestly to establish a revisory tribunal, in which not only the action of the law, but the triers of the facts, may be reviewed in all those incidents and particulars where error may have or has occurred. The General Term may determine upon the weight of evidence whether the verdict should stand, and this court will not disturb such discretionary power, as a court of review was undoubtedly established to meet just such a case as this, and to relieve the Supreme Court of the labor, as much as possible, of reviewing evidence to ascertain whether the verdict ought to stand.

WAGNER, Judge, delivered the opinion of the court.

The examination of the record has convinced us that the only question necessary to be noticed is the action of the Circuit Court at General Term in reversing the judgment at Special Term because the verdict was against the weight of evidence.

It is unnecessary to here repeat the doctrine that is found throughout the whole range of our adjudications, that an appellate tribunal will not reverse simply because the verdict is against the weight of evidence, but that to justify such an interference there must be a total and complete failure of testimony tending to support the issue. The point, then, is, in what capacity the court in General Term acts and exercises its functions.

In the case of Tilford v. Ramsey, 43 Mo. 410, it was held that the Circuit Court of St. Louis county in General Term was an appellate court, like the District Courts outside of St. Louis county, and its decisions in regard to the action of the Circuit Court at Special Term should be governed by rules applicable to appellate courts. That decision we have no disposition to disturb, and it must be taken as giving a fixed and definite construction to the powers and character of the court in General Term under its peculiar organization.

But it is contended that the act approved March 4, 1869, has

McKay et al. Underwood.

so altered the original law organizing the court that this power is now conferred, and that the full court sitting in bank has the right to review the testimony and reverse because the verdict seems to be against the weight of evidence.

The fourteenth section of the amendatory act provides that " a judgment or decree rendered, or order made, by said court at Special Term may be reversed, vacated or modified at General Term for errors appearing in the record at Special Term, or presented by exceptions taken thereat; and said court may, at General Term, award a new trial, reverse or affirm the judgment rendered, or decree or order made, at Special Term, or give such judgment as the court at Special Term ought to have given, as to them shall seem agreeable to law. But from such awards of a new trial, and from any judgment rendered, or decree or order made, at General Term, reversing or modifying a judgment rendered, or decree or order made, at Special Term, the party or parties aggrieved thereby may appeal to the Supreme Court in the same manner and with the like effect as provided for by law in respect to appeals from final judgments rendered by said court at General Term."

The object of this enactment was not in any manner to change or enlarge the scope or powers of the court at General Term as they previously existed, but to provide for appeals in cases where it was apprehended final judgment had not been rendered. It was doubted at the time whether reversing and remanding an order, judgment or decree was such a final judgment as would authorize an appeal to this court; and therefore, in order to facilitate appeals and have causes speedily settled, the law was passed. But there is nothing contained in it to countenance the idea that it was intended to confer on the General Term power to reverse merely on the weight of evidence.

The granting a new trial for the reason that the verdict is against the weight of evidence rests peculiarly with the judge presiding at the trial. He has opportunities of judging which no appellate court can possess. The manner of the witnesses, their frankness and intelligence, their disinterestedness or exhibition of prejudice, all pass in review before him; and all these

things, which are so necessary to form an accurate opinion of the credibility of evidence, are lost to the observation of a court exercising appellate jurisdiction. In the present case the judge who tried the cause at Special Term, and overruled the motion for a new trial, was absent when it came up for hearing at General Term; how, then, were the other judges, who knew nothing concerning the witnesses except what they saw written in the record, any more competent to judge of their credibility, and the weight that should be attached to their evidence, than we would have been had the cause been appealed here?

There is another consideration that is not to be passed over in silence. Admit this proceeding, and when the General Term reverses because the verdict is against the weight of testimony, the other party will appeal here, and then we must go into an examination of the evidence to see whether the decision is right, which would be in effect overturning the firmly-settled law of this court. This would take us over ground which we are unwilling to travel. We think it is safest to abide by the ancient way, and not in any manner aid in an innovation which must lead to perplexities and involve us in uncertainties.

With the concurrence of the other judges the judgment at General Term will be reversed.